UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:03CV-656-H

R.M.D. CORPORATION                                                          PLAINTIFF

V.

CALIBER ONE INDEMNITY COMPANY                                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, R.M.D. Corporation challenges Caliber One Indemnity Company's ("Defendant") denial of insurance coverage on a fire loss.  Specifically, Plaintiff alleges breach of contract, breach of the duty of good faith, and violations of the Texas Business and Commerce Code and Texas Insurance Code.[1]  Both parties have moved for summary judgment.  After consideration of the policy language, the Court concludes that it does not cover Plaintiff's claim.

**I.**

Plaintiff provides management services to restaurants.  As part of its management services, Plaintiff obtained a general commercial insurance policy for more than 30 of the restaurants, including the three barge restaurants.  Defendant provided the insurance policy with effective dates of December 31, 2000, to December 31, 2001 (the "Policy").  One particular restaurant, Remington Roadhouse ("the Restaurant"), was located on a barge in the Ohio River in Newport, Kentucky.

On July 29, 2001, the Restaurant sustained fire damage amounting to approximately

---

[1] This case was transferred here from the United States District Court for the Southern District of Texas.

$90,000. The precise amount is not disputed here. The next day Plaintiff submitted an insurance claim to Defendant. After an investigation, Defendant denied the claim pursuant to an exclusion in the Policy for "waterborne" property. That provision states in pertinent part:

> 2. Property Not Covered
> Covered Property does not include: . . .
> i) personal property while airborne or waterborne; . . .

(DN 50, Exh. 2 at 3). The term "waterborne" is not defined elsewhere in the Policy. Defendant says it did not know the Restaurant was located on a barge when it provided the insurance. Plaintiff offers no evidence to contradict this assertion. Nor did Plaintiff or its insurance agent inquire about the exclusion and its scope. The parties disagree over whether the barge was capable of transportation. They do not dispute that the barge was afloat.

## II.

Plaintiff claims the "waterborne" exclusion does not apply because the term "waterborne" is reasonably susceptible to two inconsistent interpretations, one of which favors Plaintiff. As such, it is ambiguous, and under Kentucky law Plaintiff is entitled to the interpretation that favors its position. While Plaintiff has correctly summarized Kentucky law on the interpretation of insurance contracts, the Court disagrees with Plaintiff's application of it in these circumstances.

Kentucky insurance law has two well-known "cardinal principles": that contracts should be liberally construed in favor of the insured, and that exclusions should be strictly construed to make insurance effective. *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992) (citations and internal quotations omitted). An exclusion is deemed "ambiguous" where it is susceptible to two reasonable interpretations. *St. Paul Fire & Marine*

*Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994). In the event of ambiguity the interpretation favorable to the insured controls. *Id.* While adhering to these policies in favor of insureds, the Court must still give the insurance contract "a reasonable interpretation consistent with the parties' object and intent." *Id.* The Court should not search the contract for a "nonexistent ambiguity" or "rewrite an insurance contract to enlarge the risk to the insurer." *Id.* Throughout, the Court must give words in an insurance contract their "ordinary meaning as persons with the ordinary and usual understanding would construe them." *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 904 (Ky. App. 1994). With these principles in mind, the Court determines whether the term "waterborne" is reasonably susceptible of two separate interpretations such that the interpretation favoring Plaintiff controls.

A consensus of dictionaries defines waterborne as, first, floating on or supported by water; second, transported or conveyed by water; third, transmitted by water, as a disease. *Random House Unabridged Dictionary* (2d Ed. 1993); *Webster's Third New International Dictionary* (1981); *The American Heritage Dictionary* (4th Ed. 2000). Theoretically then, as used here "waterborne" could be read to mean any of these three definitions exclusively or any combination of them collectively. Of course, not all of these readings would necessarily be reasonable. A term is not reasonably susceptible of multiple interpretations – and therefore ambiguous – simply because a dictionary contains multiple definitions for it. If this were literally true, every word with multiple shadings of meanings would be ambiguous. Also, here, it would be unreasonable, for instance, to read waterborne in this commercial liability policy as meaning exclusively those organisms transmitted by water, as a disease.

Of the possible interpretations of "waterborne" here, Plaintiff advocates exclusively for

3

the second: that "waterborne" means only those things transported or conveyed by water, not simply those things floated or supported by water. Under that definition the exclusion would not apply, Plaintiff argues, because the barge here was not capable of transportation. This argument ignores the broader definition of "waterborne." Floating or supported by water is the most basic definition of waterborne. Plaintiff has not identified, nor has the Court located, any evidence in the text or structure of the Policy of an intent to exclude the primary definition of waterborne in favor of its secondary definition alone. One cannot create ambiguity by defining a word in its absolute narrowest sense. The Court concludes that, without any justification to do so, "waterborne" cannot reasonably be read in its narrowest sense to exclude its most basic definition of those things floating or supported by water. Its commonly understood meaning is inclusive of its primary and secondary definitions. Although the barge here was securely fastened to land, no one disputes that it was floating on the Ohio River. It is "waterborne" as the word is generally and broadly defined. Therefore, property damage occurring upon it is excluded from coverage.

  The Court notes one of its own earlier decisions in which it interpreted whether a policy exclusion for injuries arising out of use of a watercraft excluded a claim for an injury sustained while working on a stationary barge. *Ayers v. C & D General Contractors*, 237 F. Supp. 2d 764 (W.D. Ky. 2002). The barge in *Ayers* served as a stationary platform from which a crane could be operated to repair a dock. Relying upon the dictionary definition of watercraft as a boat, and upon other cases interpreting watercraft as a moving vessel used for transportation, the Court decided that the barge was not a watercraft because of its stationary use. *Id.* at 770. Thus the exclusion did not apply. *Ayers* presents no analytical obstacle to the Court's decision here.

Whether a particular insurance exclusion applies will depend on the unique facts and circumstances of each case. Regardless, even assuming that the facts here mirrored those of *Ayers*, it would be perfectly consistent to consider a particular barge waterborne but not a watercraft. Waterborne has a broader meaning than watercraft.

In concluding that the exclusion applies, the Court notes some apparent unfairness to Plaintiff. That is, with respect to the three restaurants located on the "waterborne" barge, it appears Plaintiff bargained for completely ineffective insurance. This result is unfortunate, but not unconscionable, for at least four reasons: Plaintiff is a sophisticated party capable of reading and understanding insurance contracts; the ineffective insurance represented a relatively small fraction of the total policy; Defendant returned a portion of the premiums Plaintiff paid for the ineffective insurance;[2] and the original Defendant has successfully pursued a claim against its insurance against who failed to notice that exclusion affected some of the insured properties.

The Court will enter an order consistent with this Memorandum Opinion.[3]

cc:    Counsel of Record

---

[2] Defendant returned $3,426 of the total premium of $69,276.

[3] The parties have also argued at length whether Plaintiff is the real party in interest in this matter and what effect that might have on this case. The Court's decision renders resolution of that question unnecessary.